UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                      :
SYLVIA POTTS, ROLAND LYONS, AND       :
LORETHA SMITH, individually and on behalf of  :
all others similarly situated,                        :
                                                      :
                              Plaintiffs,       :
                                                      :                    11 Civ. 9071 (JPO)
            -against-                               :
                                                      :                    MEMORANDUM
THE RAWLINGS COMPANY, LLC, INGENIX   :           OPINION AND ORDER
INC., EMBLEM HEALTH COMPANY LLC, HIP :
OF NEW YORK, INC., OVATIONS INC.,          :
OXFORD HEALTH PLANS (NY), INC., and      :
UNITEDHEALTH GROUP, INCORPORATED,   :
                                                      :
                              Defendants.  :
                                                      :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

         This case is a putative class action by enrollees in Medicare Advantage plans seeking a

declaratory judgment that, pursuant to New York State General Obligation Law § 5-335 ("GOL

§ 5-335"), the Defendant Medicare Advantage organizations and their agents do not have a right

to seek reimbursement of monies that Plaintiffs received in settlements of lawsuits.  Plaintiffs

also assert a claim for violation of the New York deceptive business practices statute, N.Y. Gen.

Bus. L. § 349 ("GBL § 349").

         Plaintiffs originally filed this action in New York State Supreme Court for New York

County.  Defendants removed the case to this Court pursuant to the Class Action Fairness Act,

28 U.S.C. § 1332(d), as well as on the grounds that the claims arise under certain provisions of

the Medicare Act and implicate the Federal Officer removal statute, 28 U.S.C. § 1442(a)(1).

Defendants now move to dismiss the case for lack of subject matter jurisdiction and for failure to

state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons that follow, Defendants' motion to dismiss the case is granted.

## I.        Background

### A.        Medicare Provisions at Issue

This case concerns Medicare Advantage organizations acting as "secondary payers" under the Medicare Act.

#### 1.        Medicare Secondary Payer Act

The Medicare Secondary Payer ("MSP") Act was enacted in 1980 in an effort to contain the costs of the Medicare program.  *See Bird v. Thompson*, 315 F. Supp. 2d 369, 371 (S.D.N.Y. 2003).   Under these provisions, Medicare is, in certain circumstances, considered a "secondary payer" in relation to other sources, which are considered "primary payers."  Specifically, under 42 U.S.C. § 1395y(b)(2)(A), payment by Medicare "may not be made" to the extent that "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."  However, when these primary payers cannot pay for particular services "promptly," Medicare may make payment, conditioned upon reimbursement by the primary payer.  42 U.S.C. § 1395y(b)(2)(B)(i). The statute provides that "[a] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate [Medicare] Trust Fund for any payment made by the Secretary [of the Department of Health and Human Services ("HHS") (the "Secretary")] under this subchapter with respect to an item or service if it is demonstrated that such primary plan has

or had a responsibility to make payment with respect to such item or service."  42 U.S.C. § 1395y(b)(2)(B)(ii).

In practice, this system works as follows:  In a situation where another party is ultimately responsible for paying the healthcare costs of a Medicare enrollee, the money may not be available at the time the services are provided.  For example, if an enrollee is injured in an accident caused by a third party tortfeasor, that tortfeasor (or its insurer) is ultimately responsible for the payment of the enrollee's healthcare costs as a result of the accident.  But the enrollee will not likely receive the proceeds of any settlement with, or judgment against, the tortfeasor in time to pay her hospital bills.  In such a situation, Medicare will pay the hospital bills on the condition that either the tortfeasor reimburse the Medicare Trust Fund directly, or the enrollee reimburse the Trust Fund, to the extent she has already received monies from the tortfeasor.

The Medicare Act provides that "the United States may bring an action against any or all entities that are or were required or responsible . . . to make payment with respect to the same item or service (or any portion thereof) under a primary plan."  42 U.S.C. § 1395y(b)(2)(B)(iii).  The statute also establishes "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance" with the statute.  42 U.S.C. § 1395y(b)(3)(A).

### 2.    Medicare Advantage Program

This case involves benefits received under the Medicare Advantage ("MA") program, which is set forth in Part C of the Medicare Act.  *See* 42 U.S.C. §§ 1395w-21–1395w-29.  Under this part, Medicare enrollees may elect to receive their benefits from private insurers, called MA organizations, rather than from the government.  MA organizations enter into contracts with the

Center for Medicare and Medicaid Services ("CMS"), the branch of HHS that administers the Medicare program.  Under these contracts, CMS pays an MA organization a fixed amount for each enrollee, per capita, and the MA organization must provide the same (or more) benefits and services that the enrollee would receive under traditional Medicare.  *See* 42 U.S.C. § 1395w-22(a)(1)-(3).  *See generally Matthews v. Leavitt*, 452 F.3d 145, 147 n.1 (2d Cir. 2006) (describing legislative history and provisions of Medicare Part C).

The Medicare Advantage statutes incorporate many of the MSP provisions into the MA organization context.  Specifically, the statute provides:

> Notwithstanding any other provision of law, a [MA] organization may (in the case of the provision of items and services to an individual under a [MA] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2)) of this title charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w-22(a)(4).

The case turns on the extent to which MA organizations are granted the same reimbursement rights as the Secretary under the MSP provisions.

**B.      The New York Statute**

Plaintiffs bring their claims under Section 5-335 of New York's General Obligation Law.  That law, passed in November 2009, provides as follows:

> § 5-335.  Limitation of non-statutory reimbursement and subrogation claims in personal injury and wrongful death
>
> (a) When a plaintiff settles with one or more defendants in an

4

action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement constitute a violation of any contract between the plaintiff and such benefit provider.

Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.

GOL § 5-335.

### C.   The Instant Action

Plaintiffs are Medicare-eligible individuals who received their Medicare benefits from MA plans. Defendants are MA organizations and their collection/subrogation agents. The plaintiffs allege that each of them sustained personal injuries as a result of accidents caused by third parties. The plaintiffs received medical benefits from their respective MA plans. The plaintiffs later sued their alleged tortfeasors and settled with them. Defendants and their agents asserted subrogation liens under their respective MA plans, seeking to recover the costs of the medical expenses that the MA organizations paid on behalf of the plaintiff. Plaintiffs allege that these liens violate GOL § 5-335.

The putative class is defined as

(i) all persons who have paid monies to Defendants and/or their agents pursuant to Medicare Advantage health insurance plans

5

> (Parts C and D) in violation of [NYGOL § 5-335], (ii) all persons against who Defendants and/or  their agents have, pursuant to Medicare Advantage health insurance plans (Parts C and D) wrongfully asserted and continue to assert liens and/or rights of subrogation and/or reimbursement from settled cases and/or claims covered by GOL § 5-335, and (iii) all persons covered by a Medicare Advantage health insurance policy with respect to any personal injury, medical dental or podiatric malpractice, wrongful death cases or claims arising and/or pending in New York.

(Comp. ¶ 1.)

Plaintiffs filed this action in New York Supreme Court for New York County on November 21, 2011.  Plaintiffs brought claims seeking a declaratory judgment regarding the liens asserted by Defendants, and also for unjust enrichment and deceptive business practices. Initially, Plaintiffs also sought a preliminary injunction against Defendants' assertion of liens against the class members.

Defendants removed the case to this Court on December 12, 2011.  (Dkt. No. 1.)  The case was initially referred to Judge Robert Patterson, as possibly related to *Meek-Horton v. Trover Solutions, et al.*, No. 11 Civ. 6054, then pending before Judge Patterson.  However, the case was ultimately assigned to the undersigned.

On January 13, 2012, the Court held a status conference, during which Plaintiffs stated that they did not intend to move for remand, and accepted that the Court had jurisdiction over the case under CAFA.[1]  On February 10, 2012, Defendants moved to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.  On March 2, 2012, Plaintiffs notified the Court by letter that they were

---

[1] Ordinarily, the Court must decline jurisdiction where more than two thirds of the members of the proposed plaintiff class are citizens of the state where the action was originally filed.  28 U.S.C. § 1332(d)(4)(A)(i).  However, this provision does not apply if, "during the 3-year period preceding the filing of that class action" another class action has been filed "asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  *Id.* § 1332(d)(4)(A)(ii).  The *Meek-Horton* class action proceeding before Judge Patterson asserts similar factual allegations against largely the same defendants on behalf of substantially the same class.  *See generally* Docket, 11 Civ. 6054.  Thus, the Court is not required to decline jurisdiction under CAFA, even though it is apparent that more than two thirds of the members of the putative class are citizens of New York.

withdrawing their motion seeking a preliminary injunction.  (Dkt. No. 32.)  In Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. No. 24) ("Pl.

Opp."), Plaintiffs withdrew their cause of action for unjust enrichment.  (Pl. Opp. at 1 n.1.)

Plaintiffs also requested that the Court convert the motion to dismiss to a motion for summary

judgment and grant them summary judgment on their claims.

## II.    Discussion

### A.    Subject Matter Jurisdiction:  Exhaustion of Administrative Remedies

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' claims

because Plaintiffs are required to exhaust their administrative remedies with the Secretary before

obtaining judicial review.

### 1.    Applicable Law

As the Supreme Court has explained, "the sole avenue for judicial review for all claims

arising under the Medicare Act" is through the exhaustion of administrative remedies before the

Secretary.  *Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (citation and quotation marks

omitted).  Section 405(g) of Title 42, which appears in the Social Security Act, and which is

made applicable to Medicare Part C statute by 42 U.S.C. § 1395w-22(g)(5), provides that an

individual may obtain judicial review of "any final decision" of the Secretary.  Under 42 U.S.C.

§ 405(h), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii, "[n]o findings of

fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental

agency except as herein provided [in § 405(g).]  No action against the United States, the

[Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of

Title 28 to recover on any claim arising under [the Medicare Act.]"    In other words, "[j]udicial

review of claims arising under the Medicare Act is available only after the Secretary renders a

'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g)."

*Heckler*, 466 U.S. at 605; *see also Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) ("[T]he first

two sentences of § 405(h) . . . assure that administrative exhaustion will be required.

Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which

provision is made in § 405(g).").[2]

A "'final decision' is rendered on a Medicare claim only after the individual claimant

has pressed his claim through all designated levels of administrative review." *Heckler*, 466 U.S.

at 606. The Supreme Court has explained that the "final decision" requirement

> consists of two elements, only one of which is purely
> 'jurisdictional' in the sense that it cannot be waived by the
> Secretary in a particular case. The waivable element is the
> requirement that the administrative remedies prescribed by the
> Secretary be exhausted. The nonwaivable element is the
> requirement that a claim for benefits shall have been presented to
> the Secretary.

*Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (quoting *Matthews v. Eldridge*, 424 U.S.

319, 328 (1976)); *see also Shalala*, 529 U.S. at 15 (noting that *Eldridge* provided that "§ 405(g)

---

[2] Although section 405(h) only bars federal jurisdiction over actions against the United States, the Secretary, or any officer or employee thereof, courts have consistently held that the exhaustion requirement applies to actions against otherwise private entities that contract with CMS under Medicare Parts C and D. *See Uhm v. Humana*, 620 F.3d 1134 (9th Cir. 2010) (Part D); *Manorcare Potomac v. Understein*, No. 8:02-CV-1177-T-23EAJ, 2002 WL 31426705 (M.D. Fla. Oct. 16, 2002) (Part C); *Phillips v. Kaiser Foundation Health Plan, Inc.*, No. C 11-02326, 2011 WL 3047475 (N.D. Cal. July 25, 2011) (Part C); *cf. Bentley v. Wellpoint Cos., Inc.*, No. 11 Civ. 8963, 2012 WL 546991, at *6 n.5 (S.D.N.Y. Feb. 17, 2012) (holding in context of claim against Medicare administrative contractor that "[t]he fact that Plaintiff is suing private entities provides no relief from the jurisdictional bar of § 405(h)) (citing *Bodimetric Health Servs. v. Aetna Life & Cas.*, 903 F.3d 480, 488 (7th Cir. 1990) (holding that plaintiff's claims against private "fiscal intermediary" were subject to exhaustion requirement, and that plaintiff "may not circumvent the terms of section 405(h) simply because a private entity [the defendant] serves a public function")).

In addition, although a literal reading of section 405(h) would appear not to bar federal jurisdiction based on diversity under 28 U.S.C. § 1332 (which includes CAFA), the Seventh Circuit persuasively reasoned, based on the legislative history of the relevant provisions, that section 405(h) was, in fact, meant to bar jurisdiction based on diversity as well. *See Bodimetric*, 903 F.3d at 488-89; *see also Midland Psychiatric Associates, Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (adopting reasoning of *Bodimetric*).

The Second Circuit has not spoken on these precise issues, but the Court is persuaded by the Seventh Circuit's reasoning, and thus accepts the premise (not directly challenged by Plaintiffs) that the exhaustion provisions apply as potential jurisdictional bars to suits against MA organizations even where CAFA jurisdiction is otherwise present.

contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court").  The exhaustion requirement may be waived if further exhaustion would be futile, or in situations where an individual's claim is "wholly 'collateral'" to a claim for benefits, and the claimant makes a "colorable showing that his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." *Heckler*, 466 U.S. at 618 (quoting *Eldridge*, 424 U.S. at 330).

The Supreme Court has interpreted the "claim arising under" language in § 405(h) "quite broadly."  *Heckler*, 466 U.S. at 615.  A claim "arises under" the Medicare Act (1) if "both the standing and substantive basis" for the claim is the Medicare Act, or (2) if the claim is "inextricably intertwined" with a claim for benefits under the Medicare Act.  *Id.* at 614-15 (quotation marks omitted).  The Courts of Appeals advise that courts should be wary of claims that are "cleverly concealed claims for benefits."  *Uhm*, 620 F.3d at 1141 (quoting *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1112 (9th Cir. 2003)).  These courts hold that "Subsection 405(h) prevents beneficiaries and potential beneficiaries from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statues and regulations."  *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1104 (11th Cir. 1998); *see also Bodimetric*, 903 F.2d at 487 ("A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits.  If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely limited.").

## 2.      The Exhaustion Requirement As Applied to Plaintiffs' Claims

Plaintiffs do not dispute that the Court would not have jurisdiction over unexhausted claims that arise under the Medicare Act.  Plaintiffs also do not dispute that they have neither presented their claims to the Secretary nor exhausted their administrative remedies.  Instead, Plaintiffs argue that their claims do not arise under the Medicare Act, and are thus not subject to the exhaustion requirement.  Specifically, Plaintiffs argue that their claims are not a "request for a determination of benefits, nor a challenge to the denial of benefits," but rather that they "seek[] to challenge a Medicare Advantage Plan's invocation of a contractual right which is barred by a New York State statute."  (Pl. Opp. at 10.)  As this is not a "cleverly concealed claim for benefits," Plaintiffs argue, they are not required to exhaust any administrative remedies.[3]

Plaintiffs' arguments are contradicted by numerous decisions, all of which hold that lawsuits concerning MSP reimbursement rights must be exhausted at the administrative level and that therefore a district court is without jurisdiction to hear the claims.  *See, e.g., Fanning v. United States*, 346 F.3d 386, 400 (3d Cir. 2003); *Nygren v. United States*, 268 F. Supp. 2d 1275, 1279 (W.D. Wash. 2003); *Truett v. Bowman*, 288 F. Supp. 2d 909, 911-12 (W.D. Tenn. 2003).  As then-District Judge Lynch held in a case similar to this one (though involving ordinary Medicare, not Medicare Advantage), claims concerning reimbursement of secondary payments are "inextricably intertwined" with claims for benefits.  *Bird*, 315 F. Supp. 2d at 372.  In that

---

[3] Plaintiffs also argue that the Supreme Court's decision in *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), "cautions that courts should not treat reimbursement claims 'seeking recovery from proceeds of state-court litigation . . . as 'arising under' the laws of the United States' without a clear signal from Congress that such was intended."  (Pl. Opp. at 10 (citing *McVeigh*, 547 U.S. at 683)).  But *McVeigh* concerned an entirely different statute, the Federal Employee Health Benefit Act ("FEHBA").  The FEHBA does not contain any provisions addressing subrogation or reimbursement rights, 547 U.S. at 683, nor does it contain an express requirement that a claimant exhaust his administrative remedies.  *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993).  The decision concerned whether there was federal court jurisdiction for an insurance carrier to seek reimbursement pursuant to its contract.  The decision is simply inapposite to the question whether a Medicare Advantage enrollee's claims concerning MSP reimbursement rights arise under the Medicare Act for purposes of the exhaustion requirement

case, the plaintiff challenged the Secretary's right to seek reimbursement from the proceeds of a settlement she received from the insurance carrier of the tortfeasor who caused her injuries.  Like the plaintiffs in this case, she argued that she was not making a claim for benefits, but was merely seeking an adjudication of rights to reimbursement.  The court rejected this logic, holding that since the plaintiff received Medicare benefits conditioned upon potential reimbursement, the case was "really about her right to *keep* those monetary benefits and not reimburse the Secretary for them." *Id.* at 373.  The court concluded that "[t]he fact that the benefits were received prior to the start of this litigation, and the fact that plaintiff sues HHS and not vice versa, does not mean that the lawsuit is not about her right to a Medicare benefit." *Id.*

Plaintiffs suggest (without expressly stating) that *Bird* was wrongly decided, because the court "did not consider the factors enumerated in *Heckler* in determining whether enforcement of subrogation rights was the type of collateral claim or matter that did not require the Secretary's expertise."  (Pl. Opp. at 11.)  But *Heckler*'s consideration of whether a claim was "collateral" arose in the context of whether the exhaustion requirement can be waived, not whether the requirement applied at all.  In addition, to show that a claim is "collateral" to a claim for benefits also requires a "colorable showing" that the claimant's injury "could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies."  466 U.S. at 618.  Plaintiffs have not made any showing that their claim—even if not a claim directly seeking benefits—falls under this definition of a "collateral" claim.

The only distinctions between this case and the cases cited above are that this case concerns MA organizations, not Medicare itself, and that Plaintiffs' claims ostensibly arise under a state statute.  But courts have held that the exhaustion requirements apply to claims against MA organizations.  *See Phillips*, 2011 WL 3047475, at *7 ("To the extent Plaintiff is claiming that

Kaiser is running afoul of the Medicare Act by collecting reimbursement from her in an amount greater than what is permitted under that Act she is making a claim for benefits and must exhaust that claim."); *Manorcare*, 2002 WL 31426705, at *1.  These decisions make clear that the fact that a plaintiff "is using state law as the vehicle to press her assertion" that the MA organization is not entitled to reimbursement "does not matter."  *Phillips*, 2011 WL 3047475, at *7. Exhaustion is still required.

The district court's decision in *Bird* was based on the fact that "the claim require[d] an interpretation of substantive provisions of the Medicare Act—including the MSP provisions concerning the right of the Medicare system to claim reimbursement from the proceeds of insurance awards."  315 F. Supp. 2d at 373.  But the same reasoning applies to this case, even though Plaintiffs characterize the case as concerning issues of state law only.  The merits of Plaintiffs' claims necessarily turn on the interpretation of the Medicare Act's secondary payer provisions for MA organizations.  They ask for a declaratory judgment concerning whether the Defendants have a "right to assert and/or collect any liens and/or rights of subrogation and/or rights of reimbursement under Medicare Advantage health insurance plans."  (Comp. ¶ 60.)  The New York anti-subrogation statute at issue provides an exception "where there is a statutory right of reimbursement."  GOL § 5-335.  Application of this statute thus depends, in part, on a determination whether the Medicare Act provides for such a statutory right of reimbursement. More fundamentally, however, as set forth below, the Court concludes that to whatever extent the New York statute applies to Medicare or MA organizations, it is expressly preempted by the Medicare Act.  Thus, in either case, Plaintiff's claims do, in fact, arise under the Medicare Act, notwithstanding the fact that they are framed as state law claims.

### 3.     Preemption of the New York Statute As Applied to MA Organizations

Plaintiffs argue that their claims arise under state contract law and the New York anti-subrogation statute, and not under the Medicare Act.  However, the Court concludes that the New York statute is preempted as it applies to MA organizations.  This reinforces the Court's conclusion that Plaintiffs' claims concerning MA organization reimbursement rights necessarily arise under the Medicare Act.

Under the Supremacy Clause of the Constitution, U.S. Const. Art. VI, cl. 2, "[w]here a state statute conflicts with, or frustrates, federal law, the former must give way."  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993).  "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption" absent clear Congressional intent.  *Id.* at 663-64.  "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008).  "If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent."  *CSX Transp.*, 507 U.S. at 664.  The goal is to "identify the domain expressly pre-empted by that language."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (citation omitted).

The Medicare Act contains a very broad, express preemption clause.  The statute provides that "[t]he Secretary shall establish by regulation other standards . . . for [MA organizations] and plans consistent with, and to carry out, this part."  42 U.S.C. § 1395w-26(b)(1).  The statute further provides, under a sub-paragraph headed "Relation to State Laws": "The standards established under this part shall supersede any State law or regulation (other than

State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." § 1395w-26(b)(3).[4] *See also* 42 C.F.R. § 422.402. Courts have held that "[f]or purposes of the preemption provision, a standard is a statutory provision or a regulation promulgated under the [Medicare Act] and published in the Code of Federal Regulations." *WellCare of New York*, 801 F. Supp. 2d at 140 (quoting *Medical Card System v. Equipo Pro Convalecencia*, 587 F.Supp.2d 384, 387 (D.P.R. 2008)); *see also Uhm*, 620 F.3d at 1148 n. 20. The Medicare Advantage secondary payer statute itself states that MA organizations may charge primary payers "[n]otwithstanding any other provision of law." 42 U.S.C. § 1395w-22(a)(4).

Courts applying this preemption provision have read the language fairly broadly to preempt state law provisions such as state consumer protection statutes in the context of claims regarding MA organization marketing materials. *See Uhm*, 620 F.3d at 1151-52; *Phillips*, 2011 WL 3047475, at *8-9. In *Uhm*, the Ninth Circuit noted that application of state consumer protection laws to claims regarding MA organization marketing "could potentially undermine the Act's standards as to what constitutes non-misleading marketing." 620 F.3d at 1152. One state supreme court held that the Medicare Act preempted that state's common law unconscionability doctrine as it relates to MA organization marketing materials. *See Pacificare of Nevada, Inc. v. Rogers*, 266 P.3d 596 (Nev. 2011).

---

[4] An earlier version of the statute provided that the federal standards superseded state law "to the extent such law or regulation is inconsistent with such standards," and enumerated several "[s]tandards specifically superseded," including benefit requirements, requirements relating to inclusion or treatment of providers, coverage determinations, and requirements relating to marketing materials. 42 U.S.C. § 1395w-26(b)(3)(A) (2000). Amendments to the statute enacted in 2003 removed the qualifying language and the enumerated standards superseded to provide broadly that "any" state law with respect to MA plans is superseded. "The legislative history clarifies that the 2003 amendment was intended to increase the scope of preemption, noting that, 'the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency.'" *New York City Health & Hospitals Corp. v. WellCare of New York, Inc.*, 801 F. Supp. 2d 126, 136 (S.D.N.Y. 2011) (quoting H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926).

Here, the federal statute contains extensive provisions with respect to reimbursement rights of MA organizations in the secondary payer context.  To the extent that there could be any doubt that federal law covers MA organization reimbursement rights, and would preempt any state provisions with respect to such rights, the regulations promulgated by the Secretary pursuant to the authority set forth in the statute, 42 U.S.C. § 1395w-26(b)(1), make the point explicitly:

> [T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans.  A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer.

42 C.F.R. § 422.108(f); *see also id.* § 422.402 ("The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations.").  Plaintiffs do not—and cannot—argue that GOL § 5-335, as applied to MA organizations in this case, concerns licensing or plan solvency.  On the contrary, this New York statute plainly would apply to "take away an MA organization's right under Federal law and the MSP regulations" to seek reimbursement.  *Id.* § 422.108(f).  Accordingly, under the plain language of the express preemption provisions of the Medicare Act and its accompanying regulations, GOL § 5-335 is preempted as it applies to Medicare and MA organization reimbursement rights.

Plaintiffs argue that whether GOL § 5-335 is preempted turns on whether the Medicare Act creates a private right of action for MA organizations.  This argument fails for two reasons.  First, that the Medicare Act does not create a private right of action for MA organizations is not at all clear, as there is a split of authority on the issue.  Second, given the broad express

preemption clause in the Medicare Act, whether there is a private right of action for MA organizations is immaterial to the question whether GOL § 5-335 is preempted.

Plaintiffs are correct that several courts have held that there is no implied private right of action in Medicare Part C. *See Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003); *Konig v. Yeshiva Imrei Chaim Viznitz of Boro Park Inc.*, No. 12 Civ. 467, 2012 WL 1078633 (E.D.N.Y. Mar. 30, 2012); *Parra v. PacifiCare of Arizona, Inc.*, No. CV 10-008-TUC-DCB, 2011 WL 1119736 (D. Ariz. Mar. 28, 2011); *Nott v. Aetna U.S. Healthcare Inc.*, 303 F. Supp. 2d 565 (E.D. Pa. 2004). These decisions hold that the Medicare Advantage statutes, which permit a MA organization to charge a primary payer (or the enrollee, to the extent the enrollee has been paid by the primary payer), "do no more than create a federal right. They stop short of creating a federal private right of action to enforce that right and do not contain any jurisdictional provision granting the federal courts exclusive jurisdiction over Medicare reimbursement claims." *Parra*, 2011 WL 1119736, at \*5. In other words, Congress intended only "to permit a right of reimbursement within private insurance agreements with Medicare beneficiaries, and did not create any federally enforceable cause of action." *Nott*, 303 F. Supp. 2d at 571 (citing *Engstrom*, 330 F.3d at 791).[5]

More recently, the Third Circuit has held that whether or not there is an implied private right of action for reimbursement in the Medicare Advantage statute, the express private right of action in the Medicare Act is available to MA organizations. *See In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 685 F.3d 353 (3d Cir. 2012). That statute provides that "[t]here is established a private cause of action for damages . . . in the case of a primary plan

---

[5] Even these decisions suggest that GOL § 5-335 could be preempted by the Medicare Act. *See, e.g., Parra*, 2011 WL 1119736, at \*5 ("Congress and the Secretary did no more than protect [the MA organization's] right to charge and/or bill a beneficiary for reimbursement, notwithstanding an[y] state law or regulation to the contrary.").

which fails to provide for primary payment (or appropriate reimbursement) in accordance with"
the requirements of the Medicare Act.  42 U.S.C. § 1395y(b)(3)(A).  The court in *Avandia* held
that the plain text of the statute "is broad and unambiguous, placing no limitations upon which
private (i.e., non-governmental) actors can bring suit for double damages when a primary plan
fails to appropriately reimburse the secondary payer."  685 F.3d at 359.[6]

> The Court need not decide which line of cases to follow, because the question whether
there is an express or implied private right of action for MA organizations to enforce
reimbursement rights does not control whether the Medicare Act preempts GOL § 5-335.  This
case does not concern whether Defendants have a private right of action for reimbursement that
they can pursue in federal court.  Rather, it concerns whether a state statute that directly conflicts
with federal laws and regulations is preempted under a broad, express preemption clause.

> The decisions finding no private right of action did not address whether the Medicare
Act's express preemption clause served to preempt state laws that may contradict the federal
standards.  These decisions addressed whether there was federal jurisdiction for a reimbursement
claim brought by an MA organization.  Federal jurisdiction for such claims could be derived
from either an express or implied private right of action based on, or complete preemption by,
the federal statute.[7]  *See, e.g., Parra*, 2011 WL 1119736, at *5 (finding no jurisdiction because

---

[6] The regulations also suggest that MA organizations possess a private right of action:  "The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations . . . ."  Of course, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Thus, this regulation cannot be the source of a private right of action that Congress has not created. The regulation can, on the other hand, reflect the Department's interpretation of the statute to provide for such a right of action.  The Third Circuit in *Avandia* held that it would be appropriate under *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel*, 467 U.S. 837 (1984), to defer to the Secretary's interpretation of the statute pursuant to the authority delegated to her by the statute.  *See* 42 U.S.C. § 1395w-26(b)(1).

[7] "Complete preemption" is "not synonymous" with ordinary conflict preemption.  *Nott*, 303 F. Supp. 2d at 569. "Complete preemption" is a "narrow exception to the well-pleaded complaint rule . . . , which transforms state law causes of action into exclusively federal claims because Congress intended that the statute completely supplant all state law causes of action."  *Id.* at 568 (citing *inter alia Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

there was no implied private right of action or complete preemption).  But the question whether a

MA organization has a federal right of action for reimbursement that would preempt any related

state court remedy does not answer the separate question whether a state statute that directly

conflicts with a "standard" "with respect to MA Plans" is preempted.

In *Nott*, the court made this distinction clear.  There, the court was faced with a state

statute, similar to the one at issue in this case, prohibiting subrogation from an insured's recovery

from a tortfeasor in a motor vehicle accident case.  The case was also a putative class action on

behalf of Medicare Advantage plan beneficiaries, seeking a declaration that the MA

organization's subrogation claim violated the state statute.  The court acknowledged that "the

heart of the case" was "the collision of two statutes, one federal and the other state."   303 F.

Supp. 2d at 566-67.  However, the Court emphasized:

> Our task is not to decide which statute will ultimately prevail.
> Rather, we must determine whether the federal or the state court
> has jurisdiction to resolve the conflict between the two statutes.
> Stated differently, we must decide whether the federal statute, the
> Medicare Act, completely preempts the state statute . . . depriving
> the state court of jurisdiction. Thus, our inquiry is focused on
> jurisdiction and not on the merits of the plaintiff's claim.

*Id.* at 567.  The court held that, although the state statute itself may be preempted by the federal

laws, that did not give the federal court exclusive jurisdiction to decide the issue.  *See id.* at 571

("There is no federal cause of action created by [the statute], let alone one whose pervasive

federal character displaces all state cause of action.").  On the contrary, "[w]hether plaintiff's

state law causes of action are preempted by operation of federal law under an ordinary conflict

preemption analysis can be addressed by the state court."  *Id.* at 569.

There are few decisions dealing with the interplay between GOL § 5-335 and the

Medicare Act.  New York trial courts are apparently split on whether the statute is preempted.

Two courts from the Supreme Court of Kings County held that the Medicare Act does not

preempt GOL § 5-335.  *See Trezza v. Trezza*, 32 Misc. 3d 1209(A), 934 N.Y.S.2d 37, 2011 WL

2640794 (N.Y. Sup. Ct. June 23, 2011); *Ferlazzo v. 18th Avenue Hardware, Inc.*, 33 Misc. 3d

421, 929 N.Y.S.2d 690 (N.Y. Sup. Ct. Aug. 22, 2011).  In each of these decisions, a Medicare

Advantage enrollee sought to extinguish a purported lien asserted by their respective MA

organizations.  The courts granted the motions.  These decisions were based on the premise that,

pursuant to the federal court decisions in *Engstrom* and *Nott*, there was no private right of action

for MA organizations to seek reimbursement.  In *Trezza*, the court concluded that "'[b]ecause

'the Medicare Act permits, but does not mandate, HMO insurers to contract for subrogation

rights,' subrogation in this context remains a state contract law issue."  2011 WL 2640794, at *2

(quoting *Nott*, 303 F. Supp. 2d at 571).

A Queens County Supreme Court decision held, in accordance with the Kings County

cases, that the Medicare Act does not provide MA organizations with a federal private right of

action.  *See Spellman v. Arya*, Index No. 18662/2007, slip op. (N.Y. Sup. Ct. June 14, 2011).

Instead, the court held, such rights are contractual in nature.  However, the Queens court did

consider the express preemption provisions of the statute and regulations and held that these

provisions are "clear and unambiguous. . . . To the degree that GOL § 5-335 eliminates [the MA

organization's] contract right to seek reimbursement from plaintiff out of the settlement

proceeds, it is preempted by federal law."  *Id.* at 7-8.

The Court agrees with the approach of the Queens County Supreme Court.  Whether or

not there is a private right of action for MA organizations (and after the Third Circuit's decision

in *Avandia*, it is far less clear that there is not such a right), to the extent that GOL § 5-335 would

eliminate a MA organization's right to seek reimbursement, the statute is preempted by the Medicare Act.

In sum, the Court holds that Plaintiffs cannot circumvent the exhaustion requirement by arguing that their claims arise under GOL § 5-335, and not the Medicare Act, because the Medicare Act preempts GOL § 5-335 in this case. The decisions holding that there is no private right of action for reimbursement for MA organizations do not alter the Court's conclusion. Other courts have reached the same result:

> To the extent Plaintiff argues that her challenge to [the MA organization] Kaiser's secondary payer rights cannot "arise under" the Medicare Act because Kaiser does not have a federal cause of action to enforce such rights, *see Parra,* 2011 WL 1119736, at *5, she is mistakenly conflating the question whether *Kaiser* has a private right of action under federal law with the question whether *she* can challenge a benefits determination without exhausting her claim administratively. The fact that Kaiser has to resort to state law processes to collect secondary payer reimbursement when a beneficiary refuses to provide it does not change the fact that Plaintiff must exhaust a claim, however styled, that is "a backdoor attempt to enforce the Act's requirements and to secure a remedy for [the insurer]'s alleged failure to provide benefits." *Id.*

*Phillips*, 2011 3047475, at *7 n.12. That logic applies to this case.

Because Plaintiffs' claims, in essence, are claims seeking the retention of benefits, they arise under the Medicare Act, and Plaintiffs were obligated to exhaust their administrative remedies before bringing this action. Thus, the Court is without subject matter jurisdiction to consider those claims.

**B.    To the Extent That Any Claims Are Not Subject to Exhaustion Requirements, They Are Dismissed Because GOL § 5-335 is Preempted by the Medicare Act**

In addition to their core claim for a declaratory judgment regarding the effect of GOL § 5-335 on MA organization reimbursement rights, Plaintiffs also bring a claim for deceptive

business practices under New York General Business Law § 349, seeking compensatory damages, enhancement of damages, and attorney's fees.

There is a colorable argument that the exhaustion requirement does not apply to these claims. Courts have held that state tort law claims—even those that "relate to a denial of benefits"—may not "arise under" the Medicare Act, "especially when th[o]se claims do not seek reimbursement or provision of Medicare benefits." *Kelly v. Advantage Health, Inc.*, No. CIV A 99-0362, 1999 WL 294796, at *4 (E.D. La. May 11, 1999) (holding that tort law claim for injuries allegedly sustained because of negligently improper denial of coverage did not arise under Act); *see also Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496 (9th Cir. 1996) (same). *But see Phillips*, 2011 WL 3047475, at *7 (holding that the plaintiff must exhaust her administrative remedies, and "[i]t does not matter that [the plaintiff was] using state law as the vehicle to press her assertion"). There is also authority for the proposition that an HHS Administrative Law Judge ("ALJ") is without jurisdiction to adjudicate certain common law claims seeking damages. *See Matthews v. Leavitt*, 452 F.3d at 153 (holding that statute "does not provide for the adjudication by the ALJ of a state law breach of contract action for damages that is independent of the ALJ's determination of entitlement to benefits under the terms of the applicable agreement"). *But see id.* at 153 n.10 ("We intimate no view as to whether the ALJ's inability to hear [the plaintiff's] common law breach of contract claim for damages indicates that the claim would be cognizable in a suit brought independently of 42 U.S.C. § 405(g)." (citing 42 U.S.C. § 405(h); *Heckler*, 466 U.S. at 614, 615)).

Notwithstanding these decisions, the exhaustion requirement likely does apply to all of Plaintiffs' claims. Plaintiffs' deceptive business practices claim turns on essentially the same legal theory as their core declaratory judgment claim. It thus seems unlikely that Plaintiffs could

"prove the elements of these causes of action without regard to the provisions of the Act relating to provision of benefits." *Uhm*, 620 F.3d at 1145.

In any event, to the extent that Plaintiffs' other claims may not be subject to the exhaustion requirement, the Court's conclusion that GOL § 5-335 is preempted mandates the dismissal of these causes of action for failure to state a claim upon which relief can be granted. Plaintiffs' claims ultimately turn on whether GOL § 5-335 applies to extinguish the liens asserted by Defendants. If the New York statute is preempted, and Defendants are permitted under the Medicare Act to seek reimbursement for secondary payments, then, contrary to Plaintiffs' assertions, Defendants are not engaging in deceptive business practices by asserting the liens at issue. And to the extent that Defendants have already collected reimbursements that are permitted under the Medicare Act, they have not been unjustly enriched.

## III.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Dkt. No. 17) is GRANTED, and all claims in this action are hereby dismissed.

The Clerk of Court is directed to close this case and terminate all pending motions.

SO ORDERED.

Dated: New York, New York
        September 25, 2012

_____
J. PAUL OETKEN
United States District Judge